UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PNC BANK, National Association, | Case No. 18-cv-10711 |
| Plaintiff, | Paul D. Borman<br>United States District Judge |
| v. | |
| SELECT COMMERCIAL ASSETS, LLC and ALL OCCUPANTS OF 32102 DI STEFANO CT, FRASER, MI 48026, | Anthony P. Patti<br>United States Magistrate Judge |
| Defendants. | |
| _____/ | |

**OPINION AND ORDER
DENYING SCA'S MOTION TO STRIKE PNC'S MOTION TO ALTER OR
AMEND JUDGMENT (ECF No. 30) AND DENYING PNC'S MOTION TO
ALTER OR AMEND JUDGMENT (ECF No. 28)**

## I.  PROCEDURAL HISTORY

On May 20, 2022, this Court decided the cross-motions for summary judgment filed by the opposing parties in this case. Specifically, the Court:

> **DENIE[D]** SCA[1] summary judgment on the grounds of res judicata. The Court **GRANT[ED]** PNC summary judgment on its claim for foreclosure, but only through the 2003 HELOC . . . . The Court **GRANT[ED]** SCA summary judgment on PNC's claims for foreclosure on all other grounds. The Court **GRANT[ED]** PNC summary judgment on its claim for SCA to reimburse it for the taxes it has paid on the Property since September 12, 2014. And finally, the

---

[1] The Court will herein use the same abbreviations that it set out in its May 20 Opinion.

1

> Court **GRANT[ED]** SCA summary judgment on PNC's claim for reimbursement of the money it has spent to insure the Property.

(ECF No. 27, PageID 1502.) The Court also "**ORDER[ED]** the parties to file a joint agreement on the amount of money SCA owes for the[] taxes within **30 days**." (ECF No. 27, PageID 1501.)

In response, on June 17, PNC filed a Motion to Alter or Amend Judgment. (ECF No. 28, PageID 1503.) In this Motion, PNC argued that the Court "committed [] clear error[s] of law when it": A) "held that the 2001 HELOC does not secure repayment of the 2002 Promissory Note"; B) "held that PNC is not entitled to foreclose the 2001 HELOC because 'PNC has not produced any evidence that the 2001 HELOC is in default"; C) "misapplied Rule 56 and granted summary judgment to SCA on PNC's claim to foreclose the 2001 HELOC"; and D) "limited PNC's recovery of amounts paid for property taxes to amounts paid since September 12, 2014." (ECF No. 28, PageID 1516–24) (capitalization removed).

On June 20, the parties filed a Joint Agreement stipulating that "[t]he amount paid by PNC for real estate property taxes assessed to [the Property] since September 12, 2014, is $22,977.46." (ECF No. 29, PageID 1534) (emphasis removed).

Then, on June 24, SCA filed a Motion to Strike PNC's Motion to Alter or Amend. (ECF No. 30, PageID 1535.) SCA asked the Court to strike PNC's Motion "pursuant to Federal Rule of Civil Procedure 12(f), as the subject motion is a misnamed and

2

untimely Motion for Reconsideration, the subject Opinion and Order is not a 'judgment' or final order, and the arguments presented are improper and merely reargue the same issues already decided by the Court." (ECF No. 30, PageID 1535.) PNC filed a Response on July 8. (ECF No. 31.)

## II.    LEGAL STANDARD

Local Rule 7.1 provides that "[p]arties seeking reconsideration of final orders or judgments must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b)."

As relevant here, "a court may grant a Rule 59(e) motion to alter or amend if there is . . . a clear error of law." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Similarly, Rule 60(b)(1) allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" because of a "mistake."

## III.   ANALYSIS

To begin with, the Court **DENIES** SCA's Motion to Strike. Since the parties filed their Joint Agreement on June 20, this Court has had "nothing . . . [left] to do but execute the judgment."[2] *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1105 (6th Cir. 2019). Accordingly, at this point, the Court's prior Opinion (ECF No.

---

[2] Of course, this is setting aside the Court's obligation to decide the Motions now before it.

3

27) is a final order. Therefore, PNC's Motion to Alter or Amend is timely and properly labelled.

Nonetheless, the Court also **DENIES** PNC's Motion because it fails on the merits for the reasons that follow.

**A. The Court did not clearly err when it held that the 2001 HELOC does not secure repayment of the 2002 Promissory Note.**

The 2001 HELOC's "dragnet clause" secures "[a]ll future advances from Lender[, NCB] to Mortgagor[, the Di Stefanos] or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender executed after this Security Instrument." (ECF No. 22-2, PageID 661.) The HELOC also provides that its "duties and benefits . . . shall bind and benefit the successors and assigns of Mortgagor and Lender." (ECF No. 22-2, PageID 663.) The Court has not questioned the validity of these clauses.

Nonetheless, in its previous Opinion, the Court held that the 2001 HELOC did not secure the 2002 loan from NCMSC to the Di Stefanos because it was an advance made from an entity that was neither NCB nor then one of its successors or assigns. (ECF No. 27, PageID 1489.)

PNC argues that this holding was erroneous because:

> **3.** PNC is the successor-by-merger to [NCB]. Therefore, by operation of the above-quoted language, and by operation of federal banking law, **PNC and [NCB] are deemed to be the same entity.**

4

> **PNC therefore is [NCB]** and is entitled to all the benefits of the "Lender" under the 2001 HELOC. *[S]ee also* 12 U.S.C. § 215a(e) . . . .
>
> **4.** The 2002 Promissory Note was granted by the Di Stefanos to [NCMSC] and constitutes a "future obligation" of the Di Stefanos under a "promissory note."
>
> **5.** [NCMSC] endorsed and assigned the 2002 Promissory Note to [NCMC].
>
> **6.** [NCMC] merged into [NCB] and, as noted above, PNC is the successor-by-merger to [NCB]. Therefore, by operation of federal banking law, **PNC is [NCMC]**.
>
> **7.** Accordingly, and by operation of law, PNC is both [NCB] — the one-time mortgagee of the 2001 HELOC – and [NCMC] – the one-time holder of the 2002 Promissory Note.
>
> **[8.]** As such, PNC is the "Lender" under the 2001 HELOC, and the 2002 Promissory Note is a "future obligation[] of [the Di Stefanos] to [PNC] under any promissory note … executed by [the Di Stefanos] in favor of [PNC] executed after the [2001 HELOC] …." Accordingly, there can be no dispute that, as a matter of federal banking law, and by virtue of the above-quoted "dragnet clause" contained in the 2001 HELOC, the 2001 HELOC does, indeed, secure repayment of the 2002 Promissory Note.

(ECF No. 28, PageID 1516–19) (internal citations removed).

But even if the Court were to accept propositions three through seven, PNC's reasoning falls apart at proposition eight. PNC appears to concede in proposition eight that the dragnet clause covers only those promissory notes that are "executed by Mortgagor" (or their "successors and assigns") "in favor of Lender" (or its

5

"successors and assigns").³ And to the extent that PNC is attempting to split that clause so that it describes a promissory note executed by Mortgagor that is also a promissory note that favors Lender, but not necessarily a note that Mortgagor executed in favor of Lender, it has not made that interpretation clear, let alone argued for why it is proper. Further, that interpretation would be contrary to the plain meaning of the language, given that "executed by Mortgagor in favor of Lender" is not broken up with any punctuation or coordinators. Thus, the clause on which PNC hinges its claim only covers promissory notes that Mortgagor (or their successors and assigns) has executed specifically in favor of Lender (or its successors and assigns). *See Innovation Ventures v. Liquid Mfg.*, 499 Mich. 491, 507 (2016) ("When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written." (internal citations and quotation marks omitted)).

Yet, PNC admits that the 2002 Note was executed by the Di Stefanos in favor of *NCMSC*, not PNC or its purported equivalents of NCB or NCMC. And PNC does

---

³ And for good reason. "Under conventional rules of grammar, when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021) (internal quotation and alteration marks and citation omitted).

6

not even attempt to argue that NCMSC *was* PNC or a successor or assign of it. Thus, PNC's argument fails as a matter of law. *See Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (2003) ("[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law.")

That said, the Court also maintains that it should *not* treat NCMC and NCB as though they *were* PNC *before* they merged with it. Despite claiming that drawing this type of equivalence is "well-established" by "federal banking law," PNC does not cite a single case to support such practice. And PNC's assertion that 12 U.S.C. § 215a(e) mandates it stems from an overreading of that statute.

§ 215a(e) provides only that:

> The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and *continued in* the receiving association and such receiving association shall be deemed to *be* the same corporation as each bank or banking association participating in the merger.

12 U.S.C. § 215a(e) (emphasis added). This does not mean that the merging banks "shall be merged into and *projected backwards as* the receiving association," nor that "such receiving association shall be deemed to *have been* the same corporation as each bank." Indeed, the rest of the section confirms this distinction:

> All *rights, franchises, and interests of the <u>individual</u> merging banks* or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall

7

> hold and enjoy all rights of property, franchises, and interest, including appointments, designations, and nominations, and all other rights and interests as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, and receiver, and in every other fiduciary capacity, in the same manner and *to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger*, subject to the conditions hereinafter provided.

*Id.* (emphasis added). In other words: a merger combines the already-existing rights of the individual banks, but it does not create new rights retroactively.[4]

## B. The Court did not clearly err when it held that PNC is not entitled to foreclose the 2001 HELOC.

Ultimately, the Court concluded in its prior Opinion that "PNC is entitled to foreclose on the Property through the 2001 HELOC, because that HELOC does not secure the 2002 loan and PNC has not produced any evidence that the 2001 loan is in default." (ECF No. 27, PageID 1487.)

PNC quotes this conclusion with the "because that HELOC did not secure the 2002 loan and" portion excised and then argues that the conclusion is error because "the 2001 HELOC secures the indebtedness owing to PNC under the 2002 Promissory Note." (ECF No. 28, PageID 1520.)

---

[4] Although PNC notes that NCMSC did eventually merge into NCB, which merged into PNC, (ECF No. 28, PageID 1518), it does not argue based on those mergers. If it did, that argument would fail for the reasons discussed in these last two paragraphs: just because NCMSC eventually became a "successor" to PNC does not mean it was PNC or a successor to PNC at the time the loan was advanced and the Promissory Note was executed.

8

The excised text refutes PNC's argument. The Court did not rule that PNC needed to prove the 2001 loan was in default even though the HELOC covered the 2002 loan that was in default. Rather, the Court held that the HELOC did *not* cover the 2002 loan, and therefore PNC had to prove that the 2001 loan was in default because it was the only loan on record covered by the HELOC. PNC did not do so and therefore SCA was entitled to summary judgment on PNC's claim for recovery under the 2001 HELOC.

**C. The Court did not clearly err by misapplying Rule 56.**

PNC asserts that "the matters on which the Court based its decision to grant summary judgment in favor of SCA" on PNC's claim for foreclosure under the 2001 HELOC "were not raised by either party in any of the written submissions on their cross-motions for summary judgment." (ECF No. 28, PageID 1521.) Therefore, it argues, the Court violated Federal Rule of Civil Procedure 56(f) by "fai[ing] to provide [] notice and opportunity to be heard" on those matters. (ECF No. 28, PageID 1521–22) (citing *Amy v. Carnival Corp.*, 961 F.3d 1303, 1310–11 (11th Cir. 2020) and *Bailey v. City of Howell*, 643 F. App'x 589, 600 (6th Cir. 2016)).

The Court disagrees. The Sixth Circuit "looks to the totality of the proceedings below to determine whether the losing party had sufficient notice of the possibility that summary judgment could be granted against it." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013). "In evaluating this question, th[e Circuit]

9

considers whether the prevailing party moved for summary judgment; whether the losing party moved for summary judgment; what issues the parties focused on in their briefs; what factual materials the parties submitted to the court; and whether motions were filed by co-defendants." *Id.* All but the last of these factors demonstrate that the Court did not err. (The last factor is inapposite.)

First and second, both SCA and PNC moved for summary judgment.[5] This should have put PNC on notice that the Court was considering entering summary judgment against it.

Third, PNC focused specifically on the issue of whether the 2001 HELOC secured the 2002 loan in its briefing. Indeed, it recognized that its claim for foreclosure under that HELOC hinged on the issue, emphasizing:

> *Importantly*, because the 2001 HELOC also secured any 'other future obligations of the Mortgagor to Lender under *any* promissory note[6] . . . or other evidence of debt executed by Mortgagor in favor of Lender,' repayment of this 2002 Promissory Note was separately secured by the 2001 HELOC. On January 9, 2007, the 2002 Promissory Note was assigned to [NCMC]. PNC is the successor by mergers to [NCMC], and, therefore, by operation of federal banking law, is the successor to

---

[5] The Court recognizes that SCA's Motion focused on the separate issue of res judicata. But that does not change the fact that SCA did move for summary judgment. Nor does it outweigh the factors laid out in the rest of this analysis.

[6] That the Court's prior Opinion chose to characterize the 2002 loan as a "future advance" rather than a "future obligation . . . under a[] promissory note" is inconsequential. As explained in the Opinion and above, PNC's claim fails for the same reason either way: the advance was given by NCMSC to the Di Stefanos and in turn the Promissory Note was executed by the Di Stefanos in favor of NCMSC—and NCMSC was not under the 2001 HELOC the "Lender" or its successor or assign.

> its interests and assets, including the indebtedness reflected in the 2002 Promissory Note.

(ECF No. 22, PageID 638) (internal citations omitted) (first emphasis added, second PNC's). And it drew on this argument again later in its brief, reasoning:

> There is no dispute in this case that: the Di Stefanos granted the 2001 HELOC and 2003 HELOC; that the 2001 HELOC secures repayment of '[a]ll future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt'; or that the 2001 and 2003 HELOC remain on title for the Property and have never been discharged. There further is no dispute that PNC is the successor by mergers to [NCB] and [NCMC], and therefore obtained the 2001 HELOC, 2002 Promissory, and 2003 HELOC by operation of federal banking law. Finally, there is no dispute that the Di Stefanos have defaulted on their loan repayment obligations under the 2002 Promissory Note and 2003 HELOC, and that a collective $380,732.49 is currently due and owing on these loans.
>
> Accordingly, PNC is entitled to summary judgment of its affirmative claim for judicial foreclosure of the 2001 HELOC and 2003 HELOC . . . .

(ECF No. 22, PageID 645–46) (internal citations omitted).

Fourth, the factual materials before the Court rendered the issue ripe for judgment as a matter of law. Both parties agreed on the contents of the 2001 HELOC and the 2002 loan, and SCA did not dispute that the Di Stefanos had defaulted on the loan. And, as the Court found in its Opinion and above, the terms of the HELOC on which PNC and the Court relied are unambiguous. Thus, it was appropriate for the Court to issue a judgment as a matter of law.

11

Tellingly, PNC's argument for why the Court should reconsider its determination that the 2001 HELOC did not secure the 2002 loan is much the same as its initial argument on the issue. This underscores that PNC had a full opportunity to be heard. (It also suggests that PNC suffered no prejudice from the Court's ruling.)

**D. The Court did not clearly err when it limited PNC's recovery of amounts paid for property taxes to amounts paid since September 12, 2014.**

The Court also held in its Prior Opinion that PNC is entitled to "reimbursement for the taxes it has paid since September 12, 2014" because SCA has breached its contractual obligation to pay those taxes. (ECF No. 27, PageID 1501.)

PNC now argues that the Court "erred in limiting [its] recovery of . . . taxes to amounts paid since September 12, 2014" because "if SCA is liable for the amounts paid by PNC by virtue of SCA's role as the 'assignee' of the Di Stefanos under paragraph 22 of the HELOCs, then under paragraph 8, SCA is responsible for all amounts paid by PNC for the property's real estate taxes, including those paid by PNC prior to when SCA took ownership of the subject property on September 12, 2014." (ECF No. 28, PageID 1523–24.)

But PNC's argument fails for one simple reason: PNC has not sued for repayment of taxes that it paid before September 12, 2014. In its Amended Complaint, PNC alleged:

> 20. *Since SCA obtained title to the Property on or about September 12, 2014*, pursuant to a Deed in Lieu of Foreclosure, it has been legally responsible for payment of real estate taxes assessed to the Property.

12

>   21. Nevertheless, SCA has not made any payment towards real estate taxes assessed to the Property *since taking title on or about September 12, 2014*.
>
>   . . .
>
>   23. *Since SCA took title to the Property in October* [*sic*] *2014*, PNC has paid the real estate taxes assessed on the Property, in an amount of approximately $27,120.00 . . . .
>
>   24. SCA has received a benefit from PNC's payment of the real estate taxes assessed to the Property . . . .
>
>   25. It is unjust to permit SCA to retain these benefits received from PNC without payment to PNC and, in order to prevent injustice, SCA must return to PNC the amounts paid thereby.

(ECF No. 10, PageID 125) (emphasis added). It never mentioned taxes that it paid before SCA took title to the Property. And it concluded by "request[ing] that the Court enter a Judgment . . . ordering that SCA pay to PNC all amounts paid by PNC for *real estate taxes assessed to the Property* and hazard insurance for the Property *since SCA took title thereto*, and awarding PNC all other applicable relief." (ECF No. 10, PageID 126) (emphasis added). Therefore, PNC cannot recover for taxes paid before SCA took title to the Property. *Tucker v. Brooks*, No. 19-12514, 2022 WL 2813037, at *2 (E.D. Mich. July 18, 2022) ("The Court cannot consider claims not asserted in the operative complaint.").

Although not necessary to sustain the Court's ruling, it is also notable that PNC's briefing at the summary judgment stage did not clearly request pre-September 12

taxes either. In response to PNC's initial Motion, SCA stated that "it would reimburse PNC for those taxes" that it "otherwise owed" as "the rightful title owner of the [P]roperty." (ECF No. 24, PageID 1039.) In reply, PNC did not question SCA's characterization of what it owed and instead merely stated that "SCA admits that PNC is entitled to summary judgment of its claim for unjust enrichment." (ECF No. 26, PageID 1455–46.)

Further, even if PNC had clearly and properly asked for pre-September 12 taxes, its argument here would not establish that the Court clearly erred by not awarding it those taxes. PNC's argument relies on paragraphs eight and twenty-two of the HELOCs. But those paragraphs provide only that:

> **8.   CLAIMS AGAINST TITLE**. *Mortgagor will pay all taxes*, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property *when due*. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assessing to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.
>
> **22.   JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND**. . . . The *duties* and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

(ECF No. 22-2, PageID 660–63; ECF No. 22-7, PageID 734–76). And PNC does not explain why SCA's "duty" to "pay all taxes . . . when due" might encompass a

14

duty to pay taxes that were *previously* due, when SCA's predecessor owned the property and was liable for them.

## IV. CONCLUSION

For the reasons listed above, the Court **DENIES** SCA's Motion to Strike PNC's Motion to Alter or Amend (ECF No. 30) and also **DENIES** PNC's Motion to Alter or Amend (ECF No. 30).

**IT IS SO ORDERED.**

Dated: August 19, 2022

s/Paul D. Borman
Paul D. Borman
United States District Judge